# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                              Case No. 12-CR-233

**LEVELL MORGAN**
        **Defendant.**

## DECISION AND ORDER

Defendant Levell Morgan moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, I grant his motion.

### I. FACTS AND BACKGROUND

A confidential informant working with law enforcement made a controlled buy of crack cocaine from defendant, after which officers executed a search warrant at defendant's residence, seizing plastic baggies containing marijuana (about 16 grams) and crack cocaine (about 20 grams), a digital scale with cocaine residue on it, $5146 cash, and two firearms. Defendant pleaded guilty to possession with intent to distribute, and the pre-sentence report determined that he qualified as a career offender based on prior drug delivery convictions, producing a guideline range of 151-188 months.

The parties jointly recommended a sentence of 12 years, and I agreed that a term somewhat below the range would suffice. First, the case involved relatively small amounts, less than 20 grams of crack and 16 grams of marijuana. The matter was aggravated by firearm possession, but the record contained no evidence of use, attempted use, or threatened use of the weapons.

Second, while defendant had a significant prior record, his two career offender predicates also involved relatively modest amounts, and he did not have a history of violence. The Sentencing Commission has acknowledged that when career offender status is based on relatively minor drug offenses the guidelines may create a sentence greater than necessary. See United States v. Fernandez, 436 F. Supp. 2d 983, 989 (E.D. Wis. 2006) (citing United States Sentencing Commission, Fifteen Years of Guideline Sentencing 133-34 (Nov. 2004)). Specifically, the Commission has noted that unlike repeat violent offenders, whose incapacitation may protect the public from additional crimes by the offender, retail-level drug traffickers are readily replaced by new drug sellers. Thus, incapacitating a low-level drug seller for a long term prevents little, if any, drug selling; the crime is simply committed by someone else. The Commission has further noted that the recidivism rates of drug trafficking offenders sentenced under the career offender guideline based on prior drug convictions are lower than other offenders who are assigned to criminal history category VI based on points alone.

Third, the sentence called for by the guidelines represented a dramatic increase from defendant's prior sentences. He had never served more than 2 or 3 years before his commission of this offense. It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).

I therefore imposed a sentence of 144 months, followed by three years of supervised release. Defendant is currently serving his sentence at FCI Texarkana, with a projected

2

release date of December 14, 2022.

After the passage of the First Step Act, defendant filed a motion seeking appointment of counsel to assist him in obtaining a sentence modification. I referred the matter to Federal Defender Services ("FDS"), pursuant to the court's standing order regarding First Step Act motions, and FDS later filed a motion for compassionate release on his behalf. The government indicates that it leaves resolution of the motion to the sound discretion of the court, without further comment. (R. 59.)

## II.  DISCUSSION

### A.  Compassionate Release Standards

Pursuant to the First Step Act of 2018, the district may grant what is commonly known as "compassionate release." The statute provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The statute contains three requirements: (1) the defendant must first make a request to the warden before applying to the court; (2) the defendant must then demonstrate to the court that "extraordinary and compelling reasons" warrant a reduction in his sentence; and (3) the

3

court must determine whether, even if such reasons are shown, a reduction of the sentence would be inconsistent with the applicable § 3553(a) factors and the need to protect the public. See United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress delegated that task to the Sentencing Commission. See 28 U.S.C. § 994(t).[1] The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)    (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>     (I) suffering from a serious physical or medical condition,

---

[1]Congress did state that: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act, which allowed defendants to bring their own motions. As a result, many district judges "have concluded that, after the First Step Act, the Commission's policy statement does not constrain a court's independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)." United States v. Somerville, No. 2:12-CR-222-NR, 2020 U.S. Dist. LEXIS 93935, at *15 (W.D. Pa. May 29, 2020). In United States v. Scott, No. 17-CR-156, 2020 U.S. Dist. LEXIS 85554, at *17-18 (E.D.

5

Case 2:12-cr-00233-LA   Filed 10/27/20   Page 5 of 9   Document 60

Wis. May 15, 2020), I adopted this position. See also United States v. Brooker, No. 19-3218-CR, 2020 U.S. App. LEXIS 30605, at *20 (2d Cir. Sept. 25, 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

Giving the statutory terms their ordinary meaning, a defendant seeking compassionate release would need to demonstrate that his situation is extraordinary, i.e., beyond what is usual, customary, regular, or common, and his need for release compelling, i.e., irreparable harm or injustice will result if relief is not granted. Scott, 2020 U.S. Dist. LEXIS 85554, at *20; see also United States v. Ramirez, No. 17-10328, 2020 U.S. Dist. LEXIS 83363, at *6 (D. Mass. May 12, 2020) (indicating that U.S.S.G. § 1B1.13 provides helpful guidance on the factors that might support compassionate release, although it is not ultimately conclusive). In the context of the COVID-19 pandemic, courts have found that modification may be warranted if the prisoner demonstrates that he is particularly vulnerable to the virus based on his age, health status, or other specific circumstances; on the other hand, courts have tended to deny compassionate release requests based on general concerns about possible exposure in prison. E.g., United States v. Dover, No. 14-CR-196, 2020 U.S. Dist. LEXIS 133340, at *16-17 (E.D. Wis. July 28, 2020); see also United States v. Thomas, No. 1:11-CR-22, 2020 U.S. Dist. LEXIS 172963, at *6-7 (N.D. Ind. Sept. 22, 2020) (explaining that § 3582(c)(1)(A) contemplates a sentence reduction based on the particular circumstances of where the defendant is housed and his personal health conditions).

Finally, if the court decides that extraordinary and compelling reasons have been shown,

it must also consider the applicable § 3553(a) factors to determine whether the sentence should be modified. Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a). In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. United States v. Black, No. 1:11-cr-00083, 2020 U.S. Dist. LEXIS 142523, at *11 (S.D. Ind. Aug. 10, 2020); United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020). The court must also consider whether release would pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

**B.  Analysis**

    **1.  Exhaustion**

Defendant asked the warden for compassionate release on May 21, 2020, and more than 30 days have passed. (R. 55 at 5; R. 55-2.) Accordingly, the statute's "exhaustion" requirement is satisfied.

    **2.  Extraordinary and Compelling Reasons**

Defendant suffers from morbid obesity, with a BMI of 52, and hypertension, conditions

7

which increase his risk of severe illness from COVID-19.[2] (R. 55 at 3; R. 55-1 at 1.) The medical evidence shows that not only is defendant's obesity severe, he experiences a number of other health problems/limitations ostensibly related to his weight. (R. 55-1 at 1-2.) Thus, this is not a case in which a prisoner seeks compassionate release based solely on a BMI of 30 or more.

The CDC has further recognized "that incarcerated persons live, work, eat, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced, and that persons in such facilities cannot engage in social distancing and other hygienic measures designed to reduce transmission." United States v. Ramsey, No. 18-CR-163, 2020 U.S. Dist. LEXIS 118681, at *9 (E.D. Wis. July 7, 2020). According to the BOP, at FCI Texarkana there are currently 3 inmates and 6 staff members who have tested positive.[3] While several other facilities have experienced greater outbreaks, the presence of the virus in defendant's facility indicates that the risk of infection is more than theoretical.

I accordingly find that defendant has established extraordinary and compelling reasons for release.

### 3. Section 3553(a) Factors

As discussed above, defendant committed a non-violent drug trafficking offense. While his record included several prior convictions for similar conduct, he does not have a history of violence. He has now served more than 75% of his sentence, a term far greater than any of

---

[2]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited October 27, 2020).

[3]https://www.bop.gov/coronavirus/ (last visited October 27, 2020).

8

his previous sentences and thus sufficient to deter him. See Ramsey, 2020 U.S. Dist. LEXIS 118681, at *13 ("Reducing the sentence to time serve will still result in a longer term than defendant had previously served, producing sufficient deterrence."); see also United States v. Turner, No. 18-CR-142, 2020 U.S. Dist. LEXIS 175572, at *12 (E.D. Wis. Sept. 24, 2020) ("[T]his is not a case in which a prisoner is seeking release after serving a mere fraction of his sentence. And, because defendant has already served a far longer term than in any of his previous cases, reducing the prison sentence to time-served will still provide specific deterrence."). The record further reveals that defendant has done well in prison, with minimal discipline, working and completing rehabilitative programming. (R. 55 at 8; R. 55-3.) Finally, defendant appears to have a solid release plan in place, including a place to live and a job opportunity. (R. 55 at 9.) Releasing him now will not pose a danger to the public.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 55) is granted, and his prison sentence is reduced to time served. All other terms and conditions of the original sentence remain as set. An amended judgment shall issue forthwith.

Dated at Milwaukee, Wisconsin, this 27th day of October, 2020.

/s Lynn Adelman
LYNN ADELMAN
District Judge

9

Case 2:12-cr-00233-LA   Filed 10/27/20   Page 9 of 9   Document 60